FRANK ANGIULO,                              )
                                            )
            Plaintiff,                      )
                                            )
       v.                                   )    No. 11 C 02168
                                            )
UNITED STATES OF AMERICA,                   )    Judge Ruben Castillo
TIMOTHY GEITHNER, Secretary of the          )
Treasury, DEPARTMENT OF TREASURY,           )
and INTERNAL REVENUE SERVICE,               )
                                            )
            Defendants.                     )

## MEMORANDUM OPINION AND ORDER

Frank Angiulo ("Plaintiff") brings this action pursuant to the Rehabilitation Act of 1973,

29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"), against the United States of America ("United

States"), Timothy Geithner, Secretary of Treasury ("Geithner"), the Department of Treasury

("Treasury"), and the Internal Revenue Service ("IRS") (collectively, "Defendants"). (R. 18,

Second Am. Compl.) Presently before the Court are Defendants' motion to dismiss Plaintiff's

Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), (R. 21, Defs.'

Second Mot.), and Plaintiff's motion for reassignment of case no. 1:11-cv-09021, presently

pending before the Honorable Judge Charles Norgle, and consolidation with the current action.

(R. 27, Pl.'s Mot. Reassign.) For the reasons stated below, Defendants' motion is granted and

Plaintiff's motion is denied.

## RELEVANT FACTS

Plaintiff worked for the IRS as a revenue service agent in its Chicago District office for

over 26 years, from October 1983 until December 2009. (R. 18, Second Am. Compl.¶¶ 21-22.)

Since October 1985, Plaintiff worked for one of three teams in the Employee Pension Plans

Examinations Group ("Examinations Group") within the IRS. (*Id.* at ¶¶ 22-23.) From July 2007

until his retirement in December 2009, Plaintiff worked under the supervision of Sonja Ra'Vonn

Hall and Janice Gore, first and second line supervisors, respectively, and senior executive

supervisor Monica Templemann. (*Id.* ¶ 25.)

Plaintiff alleges that since January 2004 he has suffered from a number of physical

disabilities and cardiac conditions, including "repeated congestive heart failures requiring

hospitalization, diabetes, asthma, hypertension, high blood pressure, morbid obesity, insomnia,

severe allergies, swelling of the legs[,] and sleep apnea." (*Id.* ¶ 24.) Plaintiff also avers that he

has suffered from anxiety, stress related disorders, and depression since 2007. (*Id.*)

Plaintiff appears to seek redress for discriminatory and retaliatory acts that occurred

between May 2009 through December 2009.[1] (*Id.* ¶ 1.) Specifically, Plaintiff alleges that the

IRS discriminated against him by: (1) subjecting him to an investigation conducted by the

Treasury Inspector General for Tax Administration ("TIGTA") on or about September 11, 2009;

(2) the making of a false statement by Plaintiff's manager to the Department of Homeland

Security ("DHS") on or about October 15, 2009; (3) issuing him a counseling memorandum on

or about October 22, 2009; (4) offering to transfer him to the Determinations Section of the IRS

on or about November 30, 2009; (5) issuing him a low performance appraisal rating on or about

---

[1] Although Plaintiff states at the outset of his Second Amended Complaint that the time frame at issue commences in June 2009, the facts underlying Counts I and II begin with the filing of a reasonable accommodation request on May 14, 2009. (*Id.* at 12-21.) Additionally, Plaintiff's claim of retaliation in Count V relies upon the filing of his January 21, 2009 EEOC complaint. (*Id.* at 22-23.)

December 18, 2009; and (6) constructively discharging him by forcing him to retire effective January 1, 2010. (*Id.* ¶ 3.) According to Plaintiff, he also suffered acts of discrimination, hostile work environment, and retaliation prior to the actions that give rise to this suit. (*Id.* ¶ 4.) Those acts, however, are being addressed in a separate administrative hearing before the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) Accordingly, the Court recounts only those facts that are relevant to the mid-2009 through December 2009 time period Plaintiff specifically identified. (*Id.* ¶ 1.)

On May 14, 2009, Plaintiff submitted a reasonable accommodation request to the IRS. (R. 18-1, Ex. 7.) The disabilities listed in the request included heart failure, hypertension, major depression, stress related problems, insomnia, diabetes, sleep apnea, asthma, severe allergies, and swelling of the legs. (*Id.*) Plaintiff requested the following accommodations: "(1) Transfer to another group[;] (2) Put back on flexi-place[;] (3) Flexible starting hours[;] (4) Be able to use leave without being put on AWOL or being threatened with disciplinary actions[;] (5) Parking spot in basement[;] (6) Work at home when snow is forecast[;] (7) Call Secretary instead of manager for use of [l]eave[;] (8) [H]ave the leave letter of 1/21/2009 removed from [his] EPF[;] and (9) Not be assigned any overnight travel cases." (*Id.*)

On July 15, 2009, James W. Allen, a Federal Occupational Health ("FOH") physician reviewed Plaintiff's reasonable accommodation request and determined that Plaintiff had a substantial limitation in his ability to walk, a major life activity, due to his morbid obesity.[2] (R.

---

[2] Although Plaintiff indicates that the FOH Physician reviewed Plaintiff's accommodation request on July 21, 2009, a review of the physician's report, attached to Plaintiff's Second Amended Complaint as Exhibit 6, is dated July 15, 2009. (*Compare id.* ¶ 46, *with* R. 18-1, Ex. 6.) Accordingly, the Court relies on the date that appears in the report.

18-1, Ex. 6.) Allen indicated that the appropriate accommodation should be to limit Plaintiff's

need to walk while at work. (*Id.*) Allen also indicated that he attempted to contact Plaintiff's

psychiatrist, Dr. Pravin Bhatt, at least five times on July 14-15, 2009, but Dr. Bhatt never

returned his messages. (*Id.*) Plaintiff alleges that Defendants took no further action to

investigate, evaluate, or respond to his reasonable accommodation request based upon Plaintiff's

"psychiatric disabilities." (R. 18, Second Am. Compl. ¶ 47.)

　　At some point during the latter part of 2009, Defendants placed Plaintiff under physical

surveillance during at least one field visit. (*Id.* ¶ 51.) On September 11, 2009, Plaintiff was the

subject of an investigation conducted by the TIGTA. (*Id.* ¶ 3.) From September 30, 2009, to

October 6, 2009, Plaintiff was hospitalized for stress-related congestive heart failure. (*Id.* ¶ 48.)

When Plaintiff returned to work after this hospitalization, Hall directed him to report to the IRS

Inspector General for questioning. (*Id.* ¶¶ 18(e), 49.) On October 15, 2009, Plaintiff's manager[3]

made a false statement about Plaintiff to an employee at the DHS. (*Id.* ¶ 3(c).) On October 22,

2009, Plaintiff was issued a counseling memorandum.[4] (*Id.* ¶ 3(b).) At some point after October

2009, Plaintiff took medical leave for another episode of congestive heart failure. (*Id.* ¶ 50.) On

November 30, 2009, "Management" offered to transfer Plaintiff to the Determinations Section of

the IRS. (*Id.* ¶ 3(d).) Plaintiff alleges that this was a "purported or pre-textual reasonable

accommodation" and that he regarded it as "an act of harassment" because of the low regard for

the Determinations Section that was common among many of the revenue agents. (*Id.*) Plaintiff

---

[3] The Second Amended Complaint does not identify who specifically made the false statement.

[4] The Second Amended Complaint does not identify who issued this counseling memorandum to Plaintiff or what was contained therein.

further alleges that being transferred to the Determinations Section is a highly undesirable

assignment because it is a hostile and harassing environment and usually leads to revenue agents

being forced to retire involuntarily. (*Id.*)

On December 18, 2009, Plaintiff received a low appraisal rating that led to the denial of a

within-grade increase. (*Id.* ¶ 3(e).) Finally, some time towards the end of December 2009,[5]

Plaintiff retired involuntarily in lieu of being terminated. (*Id.* ¶ 3(f).) His retirement was

effective January 1, 2010. (*Id.*)

## PROCEDURAL HISTORY

On January 14, 2010, Plaintiff filed an employment discrimination complaint

("administrative complaint") with the IRS. (*Id.* ¶ 2.) His administrative complaint charged the

IRS with violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et*

*seq.*, § 501 of the Rehabilitation Act, 29 U.S.C. § 791, and the Age Discrimination in

Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (R. 18-1, Ex. 2 at 1.) On March

17, 2010, the IRS dismissed Plaintiff's administrative complaint because it was filed one day

late. (R. 18, Second Am. Compl. ¶ 12; R. 18-2, Ex. 2 at 2.) The EEOC affirmed the final agency

decision on August 12, 2010. (R. 18-2, Ex. 2 at 3-4.) Plaintiff sought reconsideration, which

was denied on December 27, 2010. (R. 18-1, Ex. 1 at 1-3.)

Plaintiff initiated this action on March 29, 2011, alleging discrimination and retaliation in

violation of § 501 of the Rehabilitation Act. (R. 1, Compl.) On June 15, 2011, Plaintiff filed an

---

[5] Although the Second Amended Complaint does not specify the date Plaintiff was given
the option to retire involuntarily, it is likely that this occurred shortly before December 29, 2009.
(*See* R. 18, Second Am. Compl. ¶ 16 ("This involuntary retirement coincided with the period of
time surrounding the filing [of the discrimination complaint with the IRS] in and around
December 29, 2009[,] to January 14, 20[10].").)

amended complaint. (R. 11, Am. Compl.) On June 22, 2011, Plaintiff filed a corrected amended complaint ("First Amended Complaint") against Defendants, alleging discrimination and retaliation in violation of § 501 of the Rehabilitation Act. (R. 13, First Am. Compl. at 1, ¶ 1.) On August 1, 2011, Defendants moved to dismiss Plaintiff's First Amended Complaint, arguing that because Plaintiff's administrative complaint was untimely he failed to exhaust his administrative remedies. (R. 15, Defs.' First Mot. ¶¶ 4-5.) According to Defendants, Plaintiff also failed to allege sufficient facts to support a finding that equitable tolling or equitable estoppel should excuse his failure to timely file his administrative complaint, and therefore his First Amended Complaint should be dismissed. (Id.) A status hearing on Defendants' first motion to dismiss was set for August 9, 2011. (R. 16, Not. Motion.) Plaintiff failed to appear and the Court granted Defendants' motion to dismiss without prejudice. (Aug. 9, 2011 Hr'g Tr. at 1:6-22; R. 17, Min. Entry.) The Court granted Plaintiff leave to amend his First Amended Complaint so that he could attempt to "make out a case for equitable tolling or equitable estoppel[.]" (R. 17, Min. Entry; Aug. 9, 2011 Hr'g Tr. at 2:17-3:2.)

On September 7, 2011, Plaintiff filed a Second Amended Complaint against Defendants. (R. 18, Second Am. Compl.) In his Second Amended Complaint, Plaintiff states that although the IRS found that he "filed his administrative complaint[] one day late[,]" he "does not concede a late filing, demanding strict proof of same." (Id. ¶ 12.) Alternatively, Plaintiff asserts that "in the event that Plaintiff did file [his administrative complaint] one day late, he is entitled to an equitable expansion of the filing period and application of the principle of estoppel based upon the total set of operative facts from which this cause arises[.]" (Id. ¶ 13.) Plaintiff's Second Amended Complaint sets forth five causes of action. As relevant here, he asserts various claims

of discrimination and retaliation. (*Id.* at 12-23.)

On October 4, 2011, Defendants moved to dismiss Plaintiff's Second Amended Complaint. (R. 21, Defs.' Second Mot.) Defendants argue that Plaintiff's Second Amended Complaint does not cure his failure to timely file an administrative complaint. (*Id.* ¶ 4.) Defendants also argue that none of the facts alleged by Plaintiff are sufficient to invoke the doctrine of equitable estoppel because they do not suggest that the IRS specifically interfered with Plaintiff's ability to file his administrative complaint in a timely fashion. (*Id.* ¶ 11.) Additionally, Defendants argue in a footnote against applying the doctrine of equitable tolling because Plaintiff has not established that his medical conditions specifically prevented him from filing his complaint on time. (*Id.* at 3 n.3.) Finally, in a separate footnote, Defendants argue that the only properly named Defendant is Geithner, and should the Court decline to dismiss the Second Amended Complaint in its entirety, then the Court should dismiss the claims against all Defendants except Geithner. (*Id.* at 2 n.2.) On November 14, 2011, Plaintiff filed a response to Defendants' second motion to dismiss. (R. 25, Pl.'s Resp.)

On April 27, 2012, Plaintiff filed a motion for reassignment based on relatedness of case no. 1:11-cv-09021 and consolidation with the current action. (R. 27, Pl.'s Mot. Reassign.) On April 30, 2012, the Court entered and continued the motion until the Court ruled upon Defendants' motion to dismiss. (R. 30, Min. Entry.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570, F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to

7

dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the non-movant's favor. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 5556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp*, 550 U.S. at 570). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

A plaintiff's failure to exhaust administrative remedies is an affirmative defense. *Mosley v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006). Generally, affirmative defenses are not grounds for dismissal at the complaint stage and a plaintiff need not anticipate affirmative defenses in his complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (stating that it is usually premature for a district court to dismiss a claim at the complaint stage on the basis of an affirmative defense)); *see also Indep. Trust Corp. v. Stewart Info. Serv. Corp.*, 665

F.3d 930, 935 (7th Cir. 2012). "The exception occurs where . . . the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Lewis*, 411 F.3d at 842 (citing *Leavell v. Kieffer,* 189 F.3d 492, 495 (7th Cir.1999)).

## ANALYSIS

In their motion to dismiss, Defendants raise the affirmative defense that Plaintiff failed to exhaust his administrative remedies prior to filing suit. (R. 21, Defs.' Second Mot. ¶ 2.) In his Second Amended Complaint, Plaintiff avers that he has fulfilled all the administrative prerequisites for bringing this suit and "does not concede a late filing" of his administrative complaint. (R. 18, Second Am. Compl. ¶ 11.) Alternatively, Plaintiff contends that he is entitled to equitable relief for any untimely filing of his administrative complaint under the doctrines of equitable estoppel and equitable tolling. (*Id.* ¶¶ 12-13.) In response to Defendants' motion to dismiss, Plaintiff further argues that he is entitled to an evidentiary hearing prior to this Court's ruling on Defendants' motion. (R. 25, Pl.'s Resp. ¶ 4.) The Court addresses each issue in turn.

## I.    Whether Plaintiff exhausted his administrative remedies

Plaintiff brings this action pursuant to § 501 of the Rehabilitation Act, 29 U.S.C. § 791 ("Section 501"). (R. 18, Second Am. Compl. ¶ 1.) Section 501 "imposes an affirmative duty upon federal agencies 'to structure their procedures and programs so as to ensure that handicapped individuals are afforded equal opportunity in both job assignment and promotion.'" *McWright v. Alexander*, 982 F.2d 222, 225 (7th Cir. 1992) (quoting *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 306 (5th Cir. 1981)). Congress has expressly established a private right of action under Section 501. 29 U.S.C. § 794a(a)(1); *see also McWright,* 982 F.2d at 225. Prior to filing

suit in federal district court under Section 501, federal employees are required to exhaust all administrative remedies in a timely manner. 29 U.S.C. § 794a(a)(1); *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1319-20 (7th Cir. 1984). "One administrative remedy federal employees must pursue is the filing of a formal [administrative] complaint of discrimination [with the agency] within 15 days of receiving notice of the right to do so." *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001) (citing 29 C.F.R. § 1614.106). A failure to meet the timelines for filing an administrative complaint of discrimination is construed as a failure to exhaust administrative remedies and is grounds for dismissal by a federal district court. *Ester*, 250 F.3d at 1071 (noting that a federal employee who files an untimely administrative complaint has failed to exhaust administrative remedies and is generally barred from bringing an action in federal court); *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) (noting that a suit under the Rehabilitation Act is time-barred if the complainant's administrative complaint was untimely). The administrative deadlines are construed as statutes of limitations, *see e.g.*, *Rennie v. Garrett*, 896 F.2d 1057, 1062-63 (7th Cir. 1990), and are thus subject to the doctrines of equitable estoppel, equitable tolling, and waiver. *Ester*, 250 F.3d at 1071 (citing *Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000)).

In his Second Amended Complaint, Plaintiff alleges that he "has fulfilled all administrative prerequisites" and thus is entitled to bring suit. (R. 18, Compl. ¶ 11.) Defendants, on the other hand, argue that Plaintiff failed to file a timely formal administrative complaint and thus failed to properly exhaust his administrative remedies. (R. 21, Defs.' Second Mot. ¶ 2.) According to Defendants, Plaintiff's Second Amended Complaint did not, and cannot, cure his failure to file a timely administrative complaint with the IRS. (*Id.* ¶ 4.) As an initial matter, the

Court notes that a plaintiff's failure to exhaust administrative remedies is normally considered an affirmative defense, and so Plaintiff was under "no obligation to allege facts negating an affirmative defense in [his] complaint." *Mosley*, 434 F.3d at 533. Nevertheless, dismissal may be appropriate where the face of Plaintiff's complaint compels a conclusion that he failed to exhaust his administrative remedies. *See id.*; *Lewis*, 411 F.3d at 842.

Here, Plaintiff alleges that he filed an administrative complaint with the IRS on January 14, 2010, which was denied by the IRS for "being filed one day late." (R. 18, Second Am. Compl. ¶ 2.) Despite the IRS's finding, however, Plaintiff denies that he filed his administrative complaint a day late. (*Id.* ¶ 12; R. 25, Pl.'s Resp. at 2). Aside from his allegations that he fulfilled the administrative prerequisites, (R. 18, Second Am. Compl. ¶ 11), Plaintiff fails to plead additional facts to support his assertion that his administrative complaint was not untimely. Rather, in support of his allegations, Plaintiff has attached to his Second Amended Complaint copies of the EEOC's initial decision affirming the IRS's decision, and its final decision denying reconsideration.[6] (R. 18-1, Exs. 1-2.) According to the EEOC's initial decision, the record before the EEOC disclosed that Plaintiff received a notice of right to file a formal administrative complaint on December 29, 2009. (R. 18-1, Ex. 2 at 3.) Although the December 29th notice indicated that Plaintiff had fifteen calendar days within which to file a formal complaint, Plaintiff "did not file his formal complaint until January 14, 2010, which was [one-day] beyond the limitation period." (*Id.*) The EEOC's initial decision further noted that Plaintiff failed to "provide documentation establishing his inability to timely file his formal [administrative]

---

[6] Pursuant to Rule 10(c), copies of written instruments that are exhibits to a pleading are considered to be a part of the pleading for all purposes.

complaint" to the IRS, and that on appeal he similarly "offered no additional justification to warrant an extension of the time limit for filing the complaint." (*Id.*) Accordingly, the EEOC concluded that Plaintiff's complaint was properly dismissed. (*Id.*) Upon Plaintiff's request for reconsideration, the EEOC's final decision noted that Plaintiff failed to "present evidence to show that he was so incapacitated during the time period between his receipt of the notice of right to file and the running of the 15-day period in which to file his formal complaint so as to preclude his filing of the complaint in a timely manner." (R. 18-2, Ex. 1 at 2.) Accordingly, the EEOC denied Plaintiff's request for reconsideration. (*Id.*)

On the basis of the EEOC's initial decision, attached to Plaintiff's Second Amended Complaint, it is clear that Plaintiff did not file his administrative complaint within fifteen days of receiving the required notice, and he therefore failed to exhaust his administrative remedies in a timely fashion. In light of the EEOC's initial decision, Plaintiff's allegations denying an untimely filing of his administrative complaint amount to bald assertions. His failure to allege a basis as to why the IRS's dismissal was wrong, or any facts that, if proven true, would support his assertion that he filed his administrative complaint on time is fatal to his contention that he did not file the administrative complaint on an untimely basis.[7] Without more, his claim that he filed his administrative complaint on time is not plausible. Accordingly, the Court must dismiss his suit unless Plaintiff can demonstrate that the doctrines of waiver, equitable estoppel, or equitable tolling apply.

---

[7] Without relying on any case law, Defendants question whether Plaintiff waived his ability to challenge the IRS's determination that his administrative complaint was untimely because Plaintiff first raised the issue in his Second Amended Complaint. (R. 21, Defs.' Second Mot. ¶ 6.) Because the Court finds that Plaintiff fails to allege any facts to challenge the IRS's determination, however, the Court declines to address this contention.

## II.     Whether equitable estoppel or equitable tolling apply to Plaintiff's claim

Seeking to avoid dismissal of his Second Amended Complaint, Plaintiff argues that he is

entitled to benefit from either equitable estoppel or equitable tolling.  (R. 25, Pl's. Resp. at 7-11.)

Equitable estoppel and equitable tolling are doctrines that stop a statute of limitations from

running.  *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990).  "The doctrine

of equitable estoppel, where the plaintiff alleges improper conduct on the part of the defendant, is

a more generous doctrine than the doctrine of equitable tolling-which adjusts the rights of two

innocent parties."  *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991).

### A.     Equitable estoppel

In his Second Amended Complaint, Plaintiff pleads that even if his administrative

complaint was untimely, he is nevertheless entitled to the application of equitable estoppel

because the IRS "impeded [his] abilities and contributed to the late filing."  (R. 18, Second Am.

Compl. ¶¶ 13, 15.)  The doctrine of equitable estoppel comes "into play if the defendant takes

active steps to prevent the plaintiff from suing in time[.]" *Cada*, 920 F.2d at 450.  Generally,

equitable estoppel can be invoked to prevent a defendant from obtaining a benefit from his

inequitable conduct.  *Id.* at 452.  Such conduct exists "if the defendant takes active steps to

prevent the plaintiff from suing in time . . . ." *Id.* at 450.  For example, "equitable estoppel is

available when an employee's untimely filing was a result of 'a deliberate design by the employer

or of actions that the employer should unmistakably have understood would cause the employee

to delay filing his charge.'" *Wheeldon*, 946 F.2d at 537 (quoting *Mull v. ARCO Durethene

Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir. 1986)).  "Even if a plaintiff has demonstrated that an

employer took affirmative steps to lull [him] into inaction concerning the filing of a

13

discrimination charge, the plaintiff must also establish 'actual and reasonable reliance on the defendants' conduct or representations.'" *Smith v. Porter*, 445 F.3d 1000, 1010 (7th Cir. 2006) (quoting *Mull*, 784 F.2d at 292). Furthermore, equitable estoppel against the government is generally "disfavored and rarely successful." *Gibson*, 201 F.3d at 994. When equitable estoppel is invoked against the government, the misconduct required is "more than mere negligence" and must be "an affirmative act to misrepresent or mislead" a plaintiff about his rights and remedies. *Id.* (citation omitted); *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002) ("When asserting equitable estoppel against the government, one must also prove affirmative misconduct.")

In his Second Amended Complaint, Plaintiff attempts to invoke the doctrine of equitable estoppel and argues that the IRS "actively exacerbated" his disabilities by "failing to . . . reasonably accommodate" those disabilities and creating a hostile work environment. (R. 18, Second Am. Compl. ¶ 15.) Additionally, Plaintiff contends that his forced retirement at the end of 2009 was another IRS action that "further exacerbated" his disabilities. (*Id.* ¶ 16.) All of this, Plaintiff claims, "actively impeded" his abilities and "contributed" to the untimely filing of his administrative complaint. (*Id.* ¶ 15.) Defendants argue that these factual allegations are insufficient to support a claim of equitable estoppel against them. (R. 21, Defs.' Second Mot. ¶ 11.) The Court agrees.

A finding in favor of equitable estoppel requires actions by the defendant that are specific to the statute of limitations issue of the lawsuit, apart from the underlying claim itself. *Cada*, 920 F.2d at 451. Specifically, a plaintiff must show specific "efforts by the defendant . . . to prevent the plaintiff from suing in time" and, most importantly, these actions must go "above and beyond the wrongdoing upon which the plaintiff's claim is founded[.]" *Id.* In the instant case, Plaintiff

argues that the discriminatory acts by the IRS that led Plaintiff to file his discrimination claim—wrongdoings that spanned almost two years—also caused Plaintiff to file his administrative complaint regarding those very acts one day late. (R. 18, Second Am. Compl. ¶¶ 15-16.) Plaintiff makes no allegation that Defendants specifically interfered with his ability to file his administrative complaint on time during the relevant time period at issue, namely, after he received the required notice of a right to file a formal administrative complaint. The misconduct alleged that might possibly be considered, mostly because it comes closest to the relevant time period, is Plaintiff's forced retirement at the end of December 2009. But, this "merges the substantive wrong with the tolling doctrine," and thus cannot be the basis for granting Plaintiff equitable relief. *Cada*, 920 F.2d at 451. Accordingly, the Court finds that equitable estoppel does not apply.

### B. Equitable Tolling

In his Second Amended Complaint, Plaintiff also appears to invoke the doctrine of equitable tolling by pleading that "he is entitled to an equitable expansion of the filing period" in part because his mental disabilities "contributed to the timing of his filing."[8] (R. 18, Second Am. Compl. ¶¶ 13-14.) Defendants argue that Plaintiff has failed to plead any facts in his Second Amended Complaint detailing Plaintiff's medical conditions on January 13, 2009, or alleging how his medical conditions specifically prevented him from filing his administrative complaint on time. (R. 21, Defs.' Second Mot. at 3 n.3.) Therefore, Defendants argue, equitable tolling

---

[8] Although Defendants note that the word "tolling" does not appear anywhere in Plaintiff's Second Amended Complaint, Defendants nonetheless raise an argument in a footnote that Plaintiff is not entitled to the benefit of equitable tolling. In his response to Defendants' second motion to dismiss, Plaintiff developed an argument for applying equitable tolling to his case, and Defendants reiterated their opposition on reply. Thus, this issue is ripe to rule on.

does not apply to extend the filing deadline. (*Id.*) The Court agrees.

The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Counsel of the City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001); *Cada*, 930 F.2d at 451. In other words, under the principle of equitable tolling, a plaintiff who fails to sue within the limitations period, "can get an extension of time within which to sue if it would have been unreasonable to expect [her] to sue earlier." *Shropshear*, 275 F.3d at 595. A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Unlike equitable estoppel, equitable tolling "does not require any conduct by the defendant." *Id.* at 452. Because equitable tolling involves two innocent parties, a party is only given extra time if he needs it because otherwise there is no basis for depriving the defendant of the protection of the statute of limitations. *Cada*, 920 F.2d at 451. Accordingly, equitable tolling is granted sparingly. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Plaintiff argues that his mental and emotional disabilities constitute extraordinary circumstances justifying the application of equitable tolling. (R. 25, Pl's. Resp. at 2-3.) While a plaintiff whose mental or physical impairments prevent him from complying with a statute of limitations may invoke equitable tolling, the doctrine is permitted only upon a showing that a plaintiff's medical conditions in fact prevented the plaintiff from satisfying the limitations requirement. *See Gray v. Potter*, 115 Fed.Appx. 891, 894 (7th Cir. 2004) (citing *Zerilli-Edlglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). In *Miller v. Runyon*, the Seventh

Circuit held that "mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." 77 F.3d at 191 (citations omitted). Simply because a plaintiff suffers from mental illness, however, is not a basis for applying equitable tolling. *Id.* Here, as in *Miller*, Plaintiff "comes close to arguing that mental illness per se tolls statutes of limitations in all cases in which discrimination on the basis of that mental illness is the basis of the suit." *Id.* at 191. Plaintiff has not pleaded any specific facts to support a finding that equitable tolling applies. He has not alleged any facts about his medical conditions between December 29, 2009, and January 14, 2010, that, if proven true, would show he suffered from mental and emotional disabilities so severe that they impaired his ability to effectively manage his affairs or understand his legal rights and directly caused him to miss the filing deadline for his administrative complaint. Instead, Plaintiff merely alleges that the various mental disabilities he suffers from "contributed to the timing of his filing." (R. 18, Second Am. Compl. ¶ 14.) Plaintiff also alleges that the involuntary retirement "exacerbated his anxiety and stress disorder and major depression, thereby increasing the impairment of his concentration, focus and energy which resulted in his late filing," (*Id.* ¶ 16), but these allegations do not suggest that Plaintiff was in fact prevented from filing his administrative complaint on a timely basis. While the Court is sympathetic to Plaintiff, who only filed his administrative complaint a day late, the Seventh Circuit has made clear that where a deadline is simply missed by a day, that does not constitute extraordinary circumstances justifying equitable tolling. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (rejecting petitioner's argument that statute of limitations should be equitably tolled where deadline was missed by a day.)

In support of his argument that the disabilities he suffers from entitle him to equitable tolling, Plaintiff relies on several Second Circuit cases and fails to cite a single Seventh Circuit case. Regardless, the cases Plaintiff relies upon suggest that a high threshold of incapacitation is required before a court will grant equitable tolling to extend the time limits for a claim, and therefore they do not help Plaintiff. *See Canales v. Sullivan*, 936 F.2d 755, 759 (2d Cir. 1991) (reversing dismissal where plaintiff averred that mental impairment prevented her from comprehending her legal rights during the relevant 60-day period between the agency's final decision and the expiration of the statute of limitations); *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (vacating dismissal where plaintiff argued that he was unable to complete complex tasks due to his medical condition and that this prevented him from timely filing his complaint, and plaintiff's medical condition was supported by documentation discussing Plaintiff's medical condition close in time to expiration of filing deadline); *Benn v. Greiner*, 275 F. Supp. 2d 371, 374 (E.D.N.Y. 2002) (finding equitable tolling warranted and denying motion to dismiss where plaintiff's mental impairments prevented him from understanding, applying, and executing simple directions); *Aielo v. Warden, SCI Graterford*, No. 03-1655, 2006 WL 1050283, at *2 (E.D.Pa. Apr. 20, 2006) (noting that "'a mental condition that burdens but does not prevent a prisoner from filing a timely [habeas] petition does not constitute 'extraordinary circumstances' justifying equitable tolling'" and finding, upon review of various doctors' reports, that petitioner's well-documented and extensive history of mental illness prevented him from filing a timely petition) (quoting *United States v. Harris*, 268 F. Supp. 2d 500, 506 (E.D.Pa. 2003)); *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 282-83 (S.D.N.Y. 2001) (denying motion to dismiss plaintiff's complaint as untimely where plaintiff suffered from

a mental condition that was exacerbated by any mention of her former employer); *Calderon v. U.S. Dist. Court for the Cent. Dist. of Cal.,* 163 F.3d 530, 541 (9th Cir. 1998), abrogated by *Woodford v. Garceau,* 538 U.S. 202, 206 (2003) (finding that tolling was appropriate, in part, where prisoner was suffering from serious mental problems and awaiting a mental competency exam at the time habeas petition deadline lapsed). Unlike the cases Plaintiff relies upon, Plaintiff here has failed to allege that his mental impairments during the relevant time period were of such severity that he was in fact prevented from filing his administrative complaint on time. Further, despite being given an opportunity to do so, Plaintiff has failed to provide any documentation to support the degree of his mental impairments during the relevant time period. While Plaintiff has attached letters from his psychiatrist dated February 6, 2009, and April 1, 2008, (R. 18-1, Exs. 3-4), to his Second Amended Complaint, neither of these letters helps support a finding that between December 29, 2009, and January 14, 2010, Plaintiff was suffering from mental impairments so severe as to justify equitable tolling.

Finally, in support of his argument that equitable tolling applies to his case, Plaintiff argues that the determination of whether the doctrine applies requires a case-by-case analysis. (R. 25, Pl.'s Resp. at 5.) Plaintiff is correct that the granting of equitable tolling is highly fact-dependent. *Socha v. Pollard,* 621 F.3d 667, 672 (7th Cir. 2010) (citing *Holland v. Florida,* 130 S.Ct. 2549 (2010)). In the instant case, however, Plaintiff has pled few to no facts upon which this Court may grant him equitable relief. In essence, all Plaintiff offers is the fact that he has mental disabilities, but he does not allege how these disabilities impaired his abilities during the relevant time period. Without more, Plaintiff's argument runs afoul of Seventh Circuit precedent that mere mental illnesses cannot constitute per se grounds for equitable tolling. *Miller,* 77 F.3d

at 191. Accordingly, the Court finds that Plaintiff is not entitled to equitable tolling.

## III.     Whether Plaintiff is entitled to an evidentiary hearing

Plaintiff's final argument is that he is entitled to an evidentiary hearing. (R. 25, Pl.'s

Resp. at 5.) In support, Plaintiff again relies upon Second Circuit cases where plaintiffs alleged

facts regarding their mental illnesses that explained how those illnesses affected their abilities to

pursue their claims. *See Canales*, 936 F.2d at 757 (plaintiff alleged she failed to understand the

steps she had to take to pursue her claim due to her mental illnesses); *Brown*, 287 F.3d at 60

(plaintiff alleged that his medical condition prevented him from completing complex tasks).

Unlike plaintiffs in *Canales* and *Brown*, Plaintiff has not alleged any facts demonstrating how his

mental disabilities affected his ability to pursue his claim during the relevant time period.

Furthermore, Plaintiff has not asserted that he intends to present any additional evidence he has

not already been given the opportunity to present through his allegations in his Second Amended

Complaint. If Plaintiff had alleged or supplied evidentiary affidavits which detailed how his

mental disabilities affected his abilities to manage his affairs or understand his legal rights during

the relevant time period, then an evidentiary hearing would be appropriate. Here, however,

Plaintiff has simply alleged that he suffers from mental disabilities that "contributed" to the

untimely filing of his claim. *See Douglas v. Potter*, 268 Fed. Appx. 468, 469 (7th Cir. 2008)

(affirming district court's dismissal of discrimination complaint and holding that district court

was not required to conduct an evidentiary hearing before concluding that equitable tolling did

not excuse plaintiff's failure to exhaust her administrative remedies where only physical ailments

plaintiff experienced during relevant period were headaches). Accordingly, the Court declines to

grant Plaintiff an evidentiary hearing.

## IV.    Motion for reassignment and consolidation

Plaintiff has moved the Court to reassign case no. 1:11-cv-09021 and consolidate it with the current action, pursuant to Local General Rule 40.4(a).  (R. 27, Pl.'s Mot. Reassign.) Plaintiff filed case no. 1:11-cv-09021 on December 20, 2011, against the same Defendants in the current action, but alleging separate and independent charges.  Because the Court is dismissing Plaintiff's complaint in its entirety, the Court will deny Plaintiff's motion to reassign and consolidate case no. 1:11-cv-09021 with the current action.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss (R. 21) and denies Plaintiff's motion for reassignment and consolidation (R. 27).  The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** June 8, 2012